**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| United States of America ex rel, | ) | |
| SAUL DONADO, | ) | |
|       Petitioner, | ) | |
| | ) | |
|       v. | ) | CASE NO.: 08-CV-6812 |
| | ) | |
| GUY PIERCE, Warden, | ) | Judge Robert M. Dow, Jr. |
| Pontiac Correctional Center, | ) | |
|       Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Saul Donado ("Donado"), an Illinois state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, his amended petition for a writ of habeas corpus [4] is denied.

**I.      Background**

**A.      Factual Background**

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. See 28 U.S.C. § 2254(e)(1); *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). As Petitioner Donado has not presented clear and convincing evidence challenging the statement of facts set forth in the Illinois Appellate Court's decision on direct appeal, the Court adopts the following account from the Illinois Appellate Court's Rule 23 Order on direct appeal affirming the judgment of the Circuit Court of Cook County.

At trial, Reginald Samuels testified that he was with the victim, [Arthur] Montelongo, on October 8, 2002. Samuels testified that he drove Montelongo to a convenience store near the area of Montrose and California Avenues in Chicago, Illinois. Shortly after their arrival, an

unidentified man waved to Montelongo. Montelongo walked over to the man, and Samuels left; according to Samuels' testimony, this was the last time that he saw Montelongo alive.

Chicago Police Officer Banaskiewicz testified that on October 8, 2002, at about 9:11 p.m., he investigated a report of shots being fired. Officer Banaskiewicz found Montelongo lying face down in an alley, near the garage located at 2445 West Leland, approximately six blocks from where Samuels dropped off Montelongo. The officer testified that Montelongo had sustained multiple gun shot wounds, including a gun shot wound to the back of the head. Officer Banaskiewicz immediately roped off the area to preserve the crime scene. Officer Banaskiewicz also testified that he did not find a gun on or near the victim.

Kathleen Gahagan, a forensic investigator with the Chicago Police Department performed the forensic investigation of the crime scene. Gahagan testified that there was a bullet hole in the garage door, two bullet holes in the rear wall of a garage located at 2439 West Leland, and a bullet hole in the taillight of the vehicle parked in the 2439 garage. Gahagan testified that discharged bullets were recovered from the taillight of the vehicle, the garage floor, and at least one bullet from Montelongo's body. Gahagan also testified that there were six 9 millimeter cartridge cases found under the elevated train tracks at approximately 2443 West Leland. Jennifer Ulber, a firearms expert, testified that the bullets recovered from the crime scene were fired from a 9 millimeter semi-automatic firearm. Ulber also testified that the recovered bullets were fired from the same firearm.

Dr. Adrienne Segovia, a medical examiner, examined the body of Arthur Montelongo and found that Montelongo had gunshot wounds to his head, back, chest, and forearm. Dr. Segovia testified that the gunshot wound fractured Montelongo's skull. Dr. Segovia also testified that the gunshot wound to Montelongo's head was a "contact" wound, in which the gun

was placed on the back of Montelongo's head and in contact with his scalp when fired. Dr. Segovia testified that the head wound likely would have rendered Montelongo immediately unconscious. Montelongo also had a gunshot wound to the right side of his back, in which the bullet pierced the lower portion of his right lung and traveled through the middle portion of his right lung. The bullet exited Montelongo's chest cavity, fracturing his rib. Dr. Segovia testified that there was no evidence of close-range fire and that the gunshot to Montelongo's back could have been fatal. She also related that Montelongo had a gunshot wound to his left forearm and sustained several abrasions to his face which were consistent with Montelongo falling face-down onto asphalt. Dr. Segovia concluded that Montelongo's death was a homicide, caused by multiple gunshot wounds.

Chicago Police Officer James Gildea testified that on October 19, 2002, he placed Donado into custody and brought him to the station. Officer Gildea testified that Donado was advised of his *Miranda* rights. After waiving those rights, Donado stated that on the night in question he went with a friend named George Chavez to pay Montelongo $4,500. Donado further stated that after giving Montelongo the money, he dropped Montelongo off in the vicinity of 14th Street and Cicero Avenue.

Ken Fielder testified that on October 19, 2002, he was employed as an Assistant State's Attorney. ASA Fielder testified that he interviewed Donado at the police station after Donado waived his constitutional rights. Donado stated that on the date in question, Montelongo gave him four and one-half ounces of cocaine to sell, which Donado sold for $5,500. After the sale, Donado called Montelongo, and Donado agreed to meet Montelongo at a convenience store parking lot. When he arrived, Montelongo got into his vehicle and Donado gave Montelongo

$4,500, despite selling the cocaine for $5,500. Donado told ASA Fielder that he dropped Montelongo off at the elevated train station.

ASA Fielder testified that during a second interview, Donado again waived his constitutional rights and provided a statement. This time, Donado stated that Montelongo gave him the cocaine to sell and George Chavez drove Donado to meet Montelongo at the convenience store parking lot. In the parking lot, Montelongo got into Chavez's vehicle and Chavez dropped Donado and Montelongo off in the alley at 2445 West Leland. Donado stated that another vehicle pulled into the alley and he walked up to the vehicle to exchange cocaine for money from the passengers. After the exchange, Donado walked back toward Montelongo with a bag containing money and the buyers drove away. Montelongo took the bag from Donado and discovered that it contained fake money. Donado stated that Montelongo became angry and punched and knocked him down. Donado stated that he was scared and took out his 9 millimeter gun and shot Montelongo in the chest. Montelongo started to run away and Donado shot him four or five more times before leaving the area. Donado stated that he flagged down Chavez and rode to Chavez's residence. Donado told Chavez that Montelongo had tried to "do me" and that he shot Montelongo. Donado and Chavez exchanged vehicles and drove to Donado's residence. Donado then called an unidentified individual and asked him to retrieve the gun that Donado had used to shoot Montelongo and dispose of it. ASA Fielder testified that Donado provided a videotaped statement describing this version of events.

Donado testified that Montelongo was a friend and that they were both members of the Spanish Cobras street gang. Donado testified that he and Montelongo sold drugs and "gang-banged" together. On October 8, 2002, Montelongo wanted Donado to sell four and one-half ounces of cocaine. Donado testified that after he failed to sell the cocaine, Chavez drove him to

pick up Montelongo and then dropped Donado and Montelongo off in an alley. Donado testified that a vehicle approached them in the alley and Montelongo gave the occupants of the vehicle cocaine while Donado walked up to the vehicle to collect money. Donado received a bag of money from an individual in the vehicle and handed the bag to Montelongo. Donado testified that Montelongo discovered that the bag contained "phony money" and became upset. Donado testified that Montelongo attacked him, putting his hand around Donado's neck, pushing him against a garage, and punching and kicking him. Donado testified that Montelongo told him that he was stupid for not checking the bag and that he was going to kill Donado. According to Donado, he fell to the ground and Montelongo continued to push and stomp on him, at which point Donado jumped up, pulled out his gun, and shot Montelongo once. Donado and Montelongo wrestled for the gun and shots were fired from the gun during the struggle. Donado testified that after the shots were fired, he panicked and fled.

Donado testified that he brought the gun with him on the day in question for protection; he testified that he was afraid of Montelongo because he also is a "gang-banger," he had witnessed Montelongo attack other individuals approximately 20 to 30 times during the previous 12 years,[1] and he had heard that Montelongo had previously shot an individual who owed Montelongo money. Donado testified that he did not know whether Montelongo was carrying a gun on the date in question. Donado further testified that he lied in his initial statements to police officers because he was scared and not treated nicely by the police.

Detective Richard Zuley testified that he was assigned to participate in the investigation of Montelongo's homicide. Detective Zuley testified that he was present during Donado's

---

[1] Defense counsel entered into evidence a certified statement of Montelongo's conviction for aggravated battery on a public way.

interview with the ASA Fielder and during Donado's video-taped statement. Detective Zuley testified that after Donado waived his *Miranda* rights, during his interview, Donado did not indicate that Montelongo threatened to kill him or that Donado and Montelongo were gang members. Detective Zuley also testified that Donado did not tell him that Montelongo put his hands around Donado's neck, that he had wrestled with Montelongo in the alley, or that Donado had panicked after the shooting. Detective Zuley testified that he did not instruct Donado on what to say during his videotaped statement. Zuley believed, based on the locations of Montelongo's wounds, that the shooting of Montelongo was an "execution" in which the gun was held to the back of his head when fired.

A jury convicted Donado of first degree murder, and he was sentenced to 35 years in prison, with an additional 25 years of imprisonment for using a firearm during the course of the murder.

### B.    Procedural History

On direct appeal, Donado argued that: (1) his conviction should be reversed because he had a reasonable belief that his life was in danger, or truly but unreasonably believed he needed to use deadly force in self-defense; (2) he received ineffective assistance of counsel because his trial counsel tendered a version of jury instruction 2.03A which stated that he need not present mitigating evidence, even though he had done so, and failed to tender a version of jury instruction 3.12X that would have instructed the jury to consider the victim's prior acts of and reputation for violence; (3) the 25-to-life sentence enhancement given under § 5-8-1(a)(1)(d)(iii) of the Illinois Code of Corrections, 730 ILCS 5/5-8-1(a)(1)(d)(iii), should not have applied to him and is unconstitutional; (4) the compulsory extraction and storing of his DNA violated his constitutional rights; (5) the trial court failed to admonish Donado that he could challenge "any

aspect of his sentencing hearing," and (6) the mittimus contained errors. Petitioner's Brief, *People v. Donado*, No. 1-04-2066, at 2-3 (Ill. App. Ct. Mar. 16, 2006). Except for correction of a mistake in the mittimus, each of these claims was denied. Rule 23 Order, *People v. Donado*, No. 1-04-2066 (Ill. App. Ct. Mar. 16, 2006).

Donado then filed a Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court. Petition for Leave to Appeal, *People v. Donado*, No. 102484 (Ill. Sep. 27, 2006). In his Petition, Donado asserted one claim: the appellate court erred in not finding prejudice where Donado's trial counsel submitted an improper version of jury instruction 3.12X. *Id.* On September 27, 2006, the PLA was denied. Order Denying PLA, *People v. Donado*, No. 102484 (Ill. 2006).

While his direct appeal was pending, Donado also filed a *pro se* post-conviction petition under 725 ILCS 5/122-1 in the Cook County Circuit Court. In this petition, Donado made the following claims: (1) he was arrested without a warrant or probable cause; (2) he was never read his *Miranda* rights; (3) he was denied a probable cause hearing within 48 hours of his warrantless arrest; (4) his videotaped confession was physically and psychologically coerced; (5) the State violated his Fifth Amendment rights by vouching for government witnesses and misstating the evidence; (6) his trial counsel was ineffective for failing to file a motion for a speedy trial, filing a confusing "hybrid" motion to quash arrest and suppress statements, failing to investigate the case or defense witnesses, failing to communicate with Donado regarding the case, making inappropriate comments during the trial regarding Donado, failing to object to the admission of damaging evidence, and failing to call mitigation witnesses; and (7) the trial judge was biased against him, which prejudiced the jury against Donado during his trial, and which influenced his decision to refuse to grant Donado's motion to substitute counsel, violating his Due Process rights. Post-conviction Petition, *People v. Donado*, No. 02 CR 28048 (Ill. Ct. Cl.

Nov. 28, 2005). Donado's trial judge, Judge Sachs, dismissed these charges as frivolous and patently without merit. Order Dismissing Post-conviction Petition, *People v. Donado*, No. 02 CR 28048 (Ill. Ct. Cl. Nov. 28, 2005).

Donado timely appealed this dismissal, arguing that his claim of judicial bias stated the gist of a meritorious constitutional claim, that his trial counsel failed to make an adequate record of the judge's alleged misconduct, and that his petition should be heard by a different judge. Petitioner's Brief, *People v. Donado*, No. 1-06-0176 (Ill. App. Ct. July 26, 2007). The appellate court denied his appeal on two grounds: (1) Donado failed to attached necessary support, such as affidavits, or explain their absence, in violation of 725 ILCS 5/122-2 and *People v. Collins*, 202 Ill. 2d 59 (2002); and (2) the allegations within the post-conviction petition, particularly the judicial bias claim, could have been raised on direct appeal, and were thus waived. Rule 23 Order, *People v. Donado*, No. 1-06-0176 (Ill. App. Ct. 2007). On August 27, 2007, Donado filed a Petition for Leave to Appeal to the Illinois Supreme Court, asserting two grounds for error: (1) that the appellate court erred in holding that Donado's judicial bias and ineffective assistance of trial counsel claims were procedurally waived; and (2) that the appellate court erred by upholding the trial court's dismissal of his petition, without assigning the matter to another judge. Petition for Leave to Appeal, *People v. Donado*, No. 105188 (Ill. 2007). This petition was denied by the Illinois Supreme Court. Order Denying Petition for Leave to Appeal, *People v. Donado*, No. 105188 (Ill. 2007).

On March 12, 2008, Donado filed a *pro se* Petition for Post-Judgment Relief, pursuant to 735 ILCS 5/2-1401 *et seq.*, or in the alternative, a Successive Post-Conviction Petition, pursuant to 725 ILCS 5/122-1(f) *et seq.*, in the Circuit Court of Cook County. Petition for Post-Judgment Relief, *People v. Donado*, No. 02 CR 28048 (Ill. Ct. Cl. Apr. 25, 2008). In this petition, Donado

alleged that his appellate counsel had misled him as to which claims would be included in his direct appeal, which resulted in Donado leaving out meritorious claims in his first *pro se* post-conviction petition. *Id.* at 5. Donado therefore requested leave to file the second petition, and asserted the following claims: (1) his trial counsel was ineffective for failing to investigate and file motions to suppress his confession and other statements to police, and for failing to file a motion to suppress identification evidence; (2) his appellate counsel was ineffective for failing to raise his trial counsel's ineffectiveness on those issues and for misleading Donado about which claims would be included in his direct appeal; (3) the State's introduction of evidence of Donado's other crimes through hearsay, without the ability to confront the utterers, violated his constitutional rights; and (4) his trial counsel was ineffective for failing to investigate Donado's competency or move for a competency hearing.[2] *Id.*

Once again, Judge Sachs handled Donado's petition, and Donado was denied leave to file a successive post-conviction petition. Order Denying Petitioner Leave to File Successive Petition for Post-Conviction Relief and Petition for Relief from Judgment, *People v. Donado*, No. 02 CR 28048 (Ill. Ct. Cl. Apr. 25, 2008). However, Judge Sachs addressed Donado's claims on the merits and found each to be without merit. *Id.* Donado appealed, making two arguments: first, that the cause and prejudice test should not apply to his successive post-conviction petition because the claim implicates his fitness to stand trial, and second, that he had met the cause and prejudice test. Rule 23 Order, *People v. Donado*, No. 1-08-1530 (Ill. App. Ct. 2010). The state appellate court affirmed the lower court on March 24, 2010, finding that he had established neither cause nor prejudice for his default. *Id.* Petitioner filed a PLA to the Illinois Supreme

---

[2] Donado asserts that he was "being seen by the facility psychiatrist and being prescribed psychotropic medications throughout his incarceration pending trial at the Cook County Jail facility, and throughout trial." Petition for Post-Judgment Relief, *People v. Donado*, No. 02 CR 28048.

Court, again arguing that the cause-and-prejudice test should not apply when a prisoner raises a claim of being mentally unfit to stand trial.  PLA, *People v. Donado*, No. 110269 (Ill. 2010). This petition was denied on November 3, 2010.  Order Denying PLA, *People v. Donado*, No. 110269 (Ill. 2010).

On November 26, 2008, while his second post-conviction petition was on appeal, Donado filed the instant petition pursuant to 28 U.S.C. § 2254, raising two claims: (1) Donado was denied due process based upon his trial judge's alleged misconduct; and (2) his trial counsel was ineffective for failing to file "appropriate" pre-trial motions and for filing a "hybrid" motion that confused the court.  Petition at 5.  On November 28, 2008, Donado filed an amended petition, which restated the previous claims, and added the following: (3) Donado's trial counsel also was ineffective for failing to call witnesses to verify the victim's violent past, seek a continuance to locate those witnesses, or present mitigation witnesses; (4) his appellate counsel was ineffective for failing to investigate the issue of Judge Sachs' alleged misconduct, such as by interviewing the jurors, and for failing to raise the judge's conduct on direct appeal.  Amended Petition ("Am. Pet.") at 5-6.  In the amended petition, Donado also claims that: (5) the state appellate court's denial of his self-defense claim was contrary to or an unreasonable application of federal law, or based upon an unreasonable determination of the facts; (6) the state appellate court's denial of his ineffective assistance of counsel claim with regard to improper jury instructions was contrary to or an unreasonable application of federal law; and (7) the state appellate court's denial of Donado's judicial bias claim, without acknowledging that the judge was ruling upon allegations directed against the judge himself, was based upon an unreasonable determination of the facts. Am. Pet. at 7-8.

The State filed an Answer, arguing that Donado had failed to exhaust or procedurally defaulted nearly all of these claims.  Donado then filed a Response, focusing on the state court's denial of two claims: judicial bias and ineffective assistance of counsel due to improper jury instructions.

## II.      Standard of Review

### A.      Federal Habeas Relief for State Prisoners

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a habeas petition cannot be granted unless the decision of the state court "was contrary to, or involved an unreasonable application of clearly established Federal law," or "was based on an unreasonable determination of the facts."  28 U.S.C. § 2254(d)(1–2) (2000).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law; [or] if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the United States Supreme Court.]"  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  "Avoiding these pitfalls does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court's decision constitutes an "unreasonable application" of clearly established federal law if the state court identified the correct legal rule but unreasonably applied the controlling law to the facts of the case.  *Williams*, 529 U.S. at 407.  It should be noted than "an unreasonable application of federal law is different from an *incorrect* application of federal law."  *Id.* at 410.  Rather, "unreasonable" means that a state court's decision lies "well outside the

boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

**B.      The Exhaustion Doctrine**

Before filing a habeas petition in federal court, a petitioner must have "fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This exhaustion requirement "serves an interest in federal-state comity by giving state courts the first opportunity to address and correct potential violations of a prisoner's federal rights." *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1972)). It requires the petitioner to assert each of his or her federal claims through one complete round of state-court review, either on direct appeal of his or her conviction or in post-conviction proceedings, before seeking relief in federal court. *See O'Sullivan*, 526 U.S. at 845 (concluding state prisoners must give the state court a full and fair opportunity to resolve federal constitutional claims by invoking those claims in "one complete round of the State's established appellate review process"); see also *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). This includes presentation of the claims to appellate courts where review is discretionary when that review is part of the ordinary appellate procedure in the State. *O'Sullivan*, 526 U.S. at 847 (holding that the petitioner in question was required to fully and fairly present his claims to the Illinois Supreme Court in a petition for leave to file an appeal even though that court's review both of direct appeals and post-conviction petitions is discretionary).

To fairly present a claim in state court, the petitioner must include both the operative facts and the controlling legal principles on which the claim is based, and must also alert the state court that the claim raised is based on federal law. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001); *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004). If the federal court reviewing the habeas petition is not satisfied that the petitioner gave the state courts "a meaningful opportunity to pass upon the substance of the claims [ ] presented in federal court," the Court cannot reach the merits. *Chambers*, 264 F.3d at 737-738; *see also Sweeney*, 361 F.3d at 332.

"Where state remedies remain available to a habeas petitioner who has not fairly presented his constitutional claim(s) to the state courts, the exhaustion doctrine precludes a federal court from granting him relief on that claim: although a federal court now has the option of denying the claim on its merits, 28 U.S.C. § 2254(d)(2), it must otherwise dismiss his habeas petition without prejudice so that the petitioner may return to state court in order to litigate the claim(s)." *Perruquet*, 390 F.3d at 514 (citing *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Rose v. Lundy*, 455 U.S. 509, 522 (1982)); see also 28 U.S.C. § 2254(b)(1)(A); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Dressler v. McCaughtry*, 238 F.3d 908, 912 (7th Cir. 2001). However, where a petitioner has already pursued state court remedies and there is no longer any state corrective process available to him or her, "it is not the exhaustion doctrine that stands in the path of habeas relief, see 28 U.S.C. § 2254(b)(1)(B)(i), but rather the separate but related doctrine of procedural default." *Perruquet*, 390 F.3d at 514.

If an opportunity still exists for the petitioner to return to state court to exhaust his or her unexhausted claims, the petitioner has not yet procedurally defaulted those claims and the Court must consider whether to dismiss the petition without prejudice or, if appropriate, stay the case.

See *Rose v. Lundy*, 455 U.S. 509 (1982); *Dolis v. Chambers*, 454 F.3d 721, 724 (7th Cir. 2006). Generally a federal district court may not adjudicate a mixed habeas petition. See U.S.C. § 2254(b)(1)(A); *Lundy*, 455 U.S. at 518–19. Under the total exhaustion requirement, federal district courts are required to dismiss a mixed petition without prejudice to allow petitioners to pursue exhaustion of their claims. *Lundy*, 455 U.S. at 522. The petitioner then has the option of returning to state court to exhaust his or her claims or to resubmit his or her habeas petition presenting only the exhausted claims. *Id.* at 510. Although dismissal without prejudice is the typical response to a mixed petition filed prior to exhausting the available state remedies, the Court may, in the interest of comity or judicial economy, deny a habeas petition on the merits. See 28 U.S.C. § 2254(b)(2); see also *Granberry v. Greer*, 481 U.S. 129, 134–135 (1987).

In limited circumstances, a court may "stay" a habeas petition to avoid limitations period problems. The enactment of the AEDPA altered the landscape of federal habeas law by imposing a one-year statute of limitations on the filing of federal petitions while preserving the total exhaustion requirement. See 28 U.S.C. § 2244(d). Under the AEDPA, the filing of a habeas petition in federal court does not toll the statute of limitations. See *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001). As a result, habeas petitioners who file mixed petitions in federal courts run the risk of losing their opportunity for any review of their unexhausted claims. *Rhines v. Weber*, 544 U.S. 269 (2005). In an attempt to solve this problem, some district courts have adopted a stay and abeyance procedure. *Id.* at 275. The stay and abeyance procedure should be used in "appropriate but limited circumstances." *Dolis v. Chambers*, 454 F.3d 721, 724 (7th Cir. 2006). The Seventh Circuit has cautioned that a federal district court may only stay a mixed petition "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are

potentially meritorious, and there is no indication that the petitioner engaged in intentional dilatory litigation tactics." *Id.* at 278.

### C.       Procedural Default

The procedural default doctrine, also grounded in principles of comity, federalism, and judicial efficiency, ordinarily precludes a federal court from reaching the merits of a habeas claim when either (1) the claim that was presented to the state courts and the state court ruling against the petitioner rests on adequate and independent state law grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred.  *Id.*; see also *Coleman*, 501 U .S. at 735; *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989); *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004).   Thus, when a habeas petitioner has "exhausted his state court remedies without properly asserting his federal claim at each level of the state court review"—and the opportunity to raise that claim in state court has passed—the petitioner has procedurally defaulted that claim.   *Lewis*, 390 F.3d at 1026. Similarly, procedural default on independent and adequate state grounds occurs where the state court explicitly invoked a state procedural bar rule as a separate basis for its decision to deny the petitioner relief, even if a state court reaches the merits of the petitioner's challenge to his or her conviction in an alternative holding.   See *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Miranda v. Leibach*, 394 F.3d 984, 991 (7th Cir. 2005) ("the last state court to issue an opinion of a Petitioner's federal claim has resolved that claim on an adequate and independent state ground").

Once a court has determined that a petitioner has procedurally defaulted one or more habeas claims, the default can be overcome only if the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law" or, alternatively,

show that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Under the cause and prejudice test, "cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts." *Lewis*, 390 F.2d at 1026 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Prejudice is established by showing that the violation of the petitioner's federal rights created "not merely * * * a possibility of prejudice, but that [it] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Lewis*, 390 F.3d at 1026 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); see also *Lemons v. O'Sullivan*, 54 F.3d 357, 362 (7th Cir. 1995). A federal court may grant a procedurally defaulted habeas petition even in absence of cause in extraordinary cases where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 466 U.S. at 496. In order to establish that a fundamental miscarriage of justice would result if habeas relief is denied, the petitioner must show that "no reasonable juror would have found him guilty of the crime but for the error(s) he attributes to the state court." *Lewis*, 390 F.3d at 1026 (quoting *Schlup v. Delo*, 513 U.S. 298, 327–29 (1995)).

## III.  Analysis

### A.  Petitioner's Claims

As a threshold matter, the Court must determine what claims Petitioner actually advances. Construing Petitioner's claims liberally, the Court has identified the following distinct claims between the initial petition, the amended petition, and Petitioner's response:

(1)  Petitioner was denied due process based upon his trial judge's alleged misconduct and prejudice toward him;

(2)     the state appellate court's denial of Petitioner's judicial bias claim, without acknowledging that the trial judge was ruling on allegations directed against the trial judge himself, was based upon an unreasonable determination of the facts.

(3)     Petitioner's trial counsel was ineffective for filing a "hybrid" motion that confused the court;

(4)     Petitioner's trial counsel was ineffective for failing to call witnesses to verify the victim's violent past, seek a continuance to locate those witnesses, or present mitigation witnesses;

(5)     Petitioner's appellate counsel was ineffective for failing to investigate the issue of Judge Sachs' alleged misconduct, such as by interviewing the jurors, and for failing to raise the judge's conduct on direct appeal;

(6)     Petitioner's trial counsel was ineffective for failing to file "appropriate" pre-trial motions;[3]

(7)     the state appellate court's denial of Petitioner's ineffective assistance of counsel claim with regard to improper jury instructions was contrary to or an unreasonable application of federal law; and

(8)     the state appellate court's denial of Petitioner's self-defense claim was contrary to or an unreasonable application of federal law, or based upon an unreasonable determination of the facts.

Respondent contends that Petitioner has procedurally defaulted nearly all of these claims, and that the remaining should be denied on the merits.  The Court will examine each in turn.

_____

[3]     Petitioner presents his third and sixth claims as a single issue; however, they are in essence two separate claims with different procedural histories.

## 1.    *Judicial Bias Claim*

Donado's most serious habeas claim is that his constitutional right to due process of law was violated when his criminal trial judge, Judge Sachs, "engaged in conduct that prejudiced the jury against Petitioner."  Petitioner contends that Judge Sachs's "facial expressions and noises" caused the jury to disbelieve his defense.  Petitioner's trial attorney, Raymond Prusak, put his objections to the judge's actions on the record.  Petitioner further alleges that Judge Sachs was subsequently "removed from the bench for similar prejudicial conduct towards another defendant"; however, he has not provided any support for this statement.

At the end of Donado's criminal trial, his attorney filed a motion for a new trial, which included allegations of misconduct by Judge Sachs.  Rule 23 Order at 4, *People v. Donado*, No. 1-06-0176 (Ill. App. Ct. 2007).  The motion also alleged that "the trial court cued objections to the prosecution."  *Id.*  Petitioner was then allowed to add a *pro se* amendment to the motion, which included additional allegations of inappropriate conduct by Judge Sachs, and the state filed a written response denying the allegations.  The trial court denied the motion, specifically finding that the allegations regarding its own conduct were "factually incorrect."  *Id.* at 5.  The court denied Petitioner's *pro se* amendment as well.  Donado did not challenge these rulings on direct appeal to the Illinois appellate court.

While his direct appeal was pending, Donado file a 52-page *pro se* post-conviction petition.  In this petition, Donado alleged that the judge's conduct was inappropriate and prejudicial.  In support of these claims, Donado attached only his signed verification of the petition's truthfulness.  *Id.*  Judge Sachs, the judge hearing the petition, summarily dismissed the petition, and Donado appealed, requesting a new judge on remand.  *Id.*

Respondent contends that Donado has procedurally defaulted his judicial bias claim. Even when a petitioner has presented a claim to the state courts, that claim will be considered procedurally defaulted if the state courts rejected the claim "on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730; *Perruquet*, 390 F.3d at 514. Stated another way, federal courts will not review state court decisions that rest on state law grounds that are independent of the federal question and are adequate to support the judgment. *Franklin v. Gilmore*, 188 F.3d 877, 881 (7th Cir. 1999) (citing *Coleman*, 501 U.S. at 729). Determinations are independent of federal law when they do not depend upon a federal constitutional ruling on the merits. See *Szabo v. Walls*, 313 F.3d 392, 395 (7th Cir. 2002) (citing *Stewart v. Smith*, 536 U.S. 856, 860 (2002)). State court decisions are not adequate to bar federal habeas review unless they rest upon firmly established and regularly followed state practice. *Franklin*, 188 F.3d at 882.

The following facts underlying this claim were outlined by the state appellate court in Petitioner's first post-conviction appeal:

> The trial record [ ] reveals that the trial judge called for a recess following a contested ruling made during defense counsel's cross-examination of the State's rebuttal witness. The following colloquy between Judge Stanley Sacks and defense counsel Raymond Prusak took place during that break:
>
> THE COURT: Mr. Prusak, no need to comment in front of the jury criticizing the Court's ruling. You disagree, you disagree. No need to remark in front of the jury. Answer the non-responsive answer. Already rude you disagree, you have a right to disagree.
>
> [Defense counsel]: I [would] like to make of record the fact that when my client was testifying previously, you were rolling your eyes when I was on direct.
>
> THE COURT: Absolutely not.
> [Defense counsel]: I saw it, and you were beaming like the proud father of a son when [Assistant State's Attorney] Regner was commenting. Ask the jurors when they are done.

THE COURT:  I don't want to talk about the case whatsoever when it's done.  I know you and your co-counsel have to do what's best for your clients, your client in this case.  No need to make up something that did not occur.  Let's proceed. I'm not looking at the state's attorney or juror or jurors or witnesses when your client testified.

[Defense counsel]:  I saw it, judge.

THE COURT:  I purposely avoid looking at the jurors, purposely avoid looking at the state or the witnesses.

[Defense counsel]:  You still made faces.

THE COURT:  I did not.  You're absolutely untrue about that.  Absolutely.

[Defense counsel]:  Maybe it's an involuntary twitch on your part, but.

THE COURT:  It's not anything, I did not do it and it's not appreciated, your comments.  I said before, you have a right to represent your client.  Don't do it at my expense.  Bring the jury out. I don't plan to ask them anything when they come back.

[Defense counsel]:  Might be something you want to know.

THE COURT:  I know what I do up here, Mr. Prusak.

[Defense counsel]:  I was watching you the whole time.

THE COURT:  One more thing before they come out. You want to go home tonight, don't ask me more stupid questions about things I already ruled against you on."

After the jury found defendant guilty of first degree murder, defense counsel filed a motion for a new trial.  That motion asserted, in part, that defendant was denied a fair trial due to the trial judge's conduct.  The motion specifically alleged that the trial judge rolled his eyes and sighed during defendant's direct examination.  It also alleged similar conduct during the rest of defense counsel's cross-examinations and closing arguments, as contrasted with the trial judge's attentive and focused demeanor during the State's trial activities. Finally, the motion asserted that the trial court cued objections to the prosecution and that defense counsel had spoken with some of the jurors following the verdict and had verified that they were aware of the judge's conduct.  The State filed a written response to the motion which denied all of these allegations.

At the hearing on the motion, the trial judge also allowed defendant to file a *pro se* amendment to defense counsel's motion which included claims of ineffective

assistance of counsel and inappropriate conduct on the part of the trial judge.  In his amendment, defendant alleged that the trial judge said that defense counsel was a criminal, commented on the credibility of witnesses "by word and deed," and allowed counsel to refer to defendant as "a dumbass, gang banger, drug dealer, a liar, and a murderer."

The trial court first addressed the motion filed by defense counsel. Defense counsel noted that the allegations in his motion regarding the trial judge's actions spoke for themselves and therefore did not supplement them with any argument. For its part, the State continued to categorically deny what it described as defense counsel's "baseless" allegations. The trial court denied the motion, specifically finding that the allegations regarding his conduct were factually incorrect. The trial judge also noted that at trial he had instructed the jury that he did not have, and never intended to indicate, any opinion on the facts of the case or what the verdict should ultimately be.

The court then turned to the allegations in defendant's amendment. Defendant did not provide any argument in support of the allegations regarding the court's actions and the State provided no response. The trial court denied this "motion" as well, generally referring to its prior comments with respect to defense counsel's motion.

In addressing Petitioner's claim, the state appellate court noted that Petitioner's allegations of judicial bias in his post-conviction petition mirrored those contained in the post-trial motions, that Petitioner restated and incorporated the post-trial allegations in his petition, and that Petitioner attached only his signed verification attesting to the petition's truthfulness. The state appellate court concluded that the dismissal of Petitioner's post-conviction petition was thus proper for two reasons:  (1) Petitioner failed to attach sufficient supporting material or supply an explanation for the lack of such material; and (2) Petitioner had forfeited this claim because it could have been raised on direct appeal (not just in the post-trial motions before the trial court) and Petitioner had failed to show any reason for relaxation of the application of the forfeiture doctrine.

Under the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.*, a petitioner is required to support the factual allegations of his petition by attaching affidavits, records, or other

evidence, or to explain why such supporting material is not attached. 725 ILCS 5/122-2. Here, Petitioner supported his post-conviction petition with only his own affidavit verifying its truthfulness. The state appellate court noted that although Petitioner claimed difficulties in obtaining other evidentiary support, "no effort was made in the petition itself to explain this absence of supporting documentation." The state appellate court thus concluded that the lack of sufficient supporting material and an explanation for the lack of such support justified the petition's dismissal. *Id.* (citing *People v. Collins*, 782 N.E.2d 195, 198-200 (Ill. 2002)).

Petitioner's failure to comply with the state procedural rules requiring that his claim be supported by affidavits, and the state appellate court's rejection of the claim on that ground, constitutes a procedural default that bars federal habeas review of the claim. See *Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *Hampton v. Liebach*, 347 F.3d 219, 242 (7th Cir. 2003) ("A petitioner's procedural default will bar federal habeas review * * * if the state court actually relied on that default as an independent basis for its decision."); see also *Szabo*, 313 F.3d at 395 ("A state is entitled to treat as forfeited a proposition that was not presented in the right court, in the right way, and at the right time — as state rules define those courts, ways, and times."); *Wright v. Briley*, 2004 WL 816438, at *4 (N.D. Ill. 2004).

Additionally, in dismissing the post-conviction petition, the court found that the claim was forfeited. Specifically, the court noted: "Here, defendant's petition alleged that the trial judge made a number of gestures and comments that exhibited judicial bias and precluded him from having a fair trial. However, defendant's petition is supported solely by matters in the trial record, and it in fact expressly incorporates the allegations contained in his post-trial motion.

Because defendant could have raised this issue on direct appeal, it is now waived."[4]  The state appellate court further explained that Petitioner had failed to demonstrate any reason for relaxation of the waiver doctrine, holding that: (1) the facts relating to Petitioner's claim of judicial bias appeared on the face of the original appellate record; (2) Petitioner did not claim that the waiver resulted from the ineffective assistance of appellate counsel; and (3) Petitioner had not demonstrated that fundamental fairness mandated a disregard of his waiver.  The court pointed to Petitioner's failure to raise an issue or allege facts that were not already contained in the trial court record available at the time of his direct appeal, and his failure to identify any objective factor that precluded him from raising this issue on direct appeal.  The state appellate court therefore concluded that Petitioner's failure to raise this issue at an earlier time also justified dismissal of the petition.  Because the state appellate court's decision was grounded on state procedural rules, which were proclaimed in advance and regularly followed, that decision rested on adequate and independent state grounds, precluding federal habeas review here. *Coleman*, 501 U.S. at 729; *Szabo*, 313 F.3d at 395-96; *Luczak v. Schomig*, 2003 WL 1627844, at *6 (N.D. Ill. 2003).

Petitioner is correct that a prisoner may avoid this procedural hurdle by showing "cause for the default and actual prejudice as a result of the alleged violation of federal law, or [by] demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice."  *Id.* at 750.  Donado does not allege cause and prejudice,[5] but does assert that there has

---

[4]  Illinois state courts sometimes use the term waiver when forfeiture is meant.  See *People v. Blair*, 831 N.E.2d 604, 622 n.5 (Ill. 2005).

[5]  To the extent that Petitioner is arguing that his appellate counsel's ineffectiveness constitutes "cause" for his failure to raise the claim of prejudicial judicial bias on direct appeal, Petitioner's ineffective assistance of appellate counsel claim is itself procedurally defaulted.  "[T]he assertion of ineffective assistance as a cause to excuse a procedural default in a § 2254 petition is, itself, a constitutional claim

been a fundamental miscarriage of justice which has resulted in the conviction of an actually innocent party.

Unfortunately for Donado, his arguments are insufficient to clear the high hurdle set for this extraordinary remedy. Putting aside the question of whether his allegations actually rise to the level of a constitutional violation, Donado sets forth no new evidence suggesting that he is actually innocent of his crime. For a fundamental miscarriage of justice claim to be credible, a petitioner must "support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). To the contrary, the only evidence that Donado presents of his innocence has been available from the very beginning: the very evidence on which the jury relied in finding him guilty. He therefore "comes before the habeas court with a strong—and in the vast majority of * * * cases conclusive—presumption of guilt." *Id.* at 326 n.42. After reviewing the record, the Court sees no evidence of actual innocence to counter this presumption. To the contrary, Donado admits that he shot Montelongo; the only question is whether he did so in self-defense.

Therefore, since Petitioner's claim of judicial bias was denied by two adequate and independent state law grounds, and no evidence of a fundamental miscarriage of justice was presented, Petitioner's first habeas claim is procedurally barred.

---

that must have been raised before the state court or be procedurally defaulted." *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003) (citing *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)); *see Lewis*, 390 F.3d at 1026 ("[A] claim of ineffectiveness must itself have been fairly presented to the state courts before it can establish cause for a procedural of another claim."). Because Petitioner never raised an ineffective assistance of appellate counsel claim in his state court proceedings, it is procedurally defaulted and cannot establish cause for the procedural default of the claim regarding the trial judge's alleged bias. See also *supra* pp. 24-26.

### 2. *Appellate court's treatment of judicial bias claim*

Based on the Court's reading of the Petition, Petitioner's second habeas claim is that the state appellate court's denial of his judicial bias claim—without acknowledging that the trial judge was ruling upon allegations directed against the trial judge himself—was based upon an unreasonable determination of the facts. More specifically, Petitioner's Amended Petition makes the following claim:

> Petitioner alleges that he is being held unlawfully in custody in violation of due process under the Sixth and Fourteenth Amendments because: the state court's denial of his claim that [the] trial judge biased the jury against him through nonverbal cues which favored the state and denigrated the defense without taking notice that the same judge reviewed allegations of his own misconduct twice after expressly acknowledging his partial[ity] in the outcome, is based on an unreasonable determination of facts in light of the evidence presented in the state court's proceedings. Since such a claim involves fundamental fairness, it would be fundamentally unfair if review were precluded.

Am. Pet. at 8.

At the outset, the Court notes that Petitioner has provided no evidence to support his claim that the Judge "expressly acknowledge[ed] his partial[ity]." In fact, Judge Sachs expressly and consistently *denied* Petitioner's claims of bias, both at the time of the trial, in his denial of Petitioner's motion for a new trial, and in his denial of Petitioner's post-conviction petition. For example, in response to defense attorney's accusations of bias during a recess, the judge variously replied: "[a]bsolutely not"; "[n]o need to make something up that did not occur;" "I did not. You are absolutely untrue about that. Absolutely"; "I did not do it and it's not appreciated, your comments." In the post-conviction petition under discussion, Judge Sachs expressly found Petitioner's judicial bias claim to be "patently frivolous and without merit."

Turning to the merits, the Court has parsed this argument several times and finds it to be curious, if not somewhat confusing. The state appellate court's ruling was based entirely on

procedural grounds; whatever Judge Sachs' alleged misconduct, he did not cause Petitioner to fail to follow state procedure. To the extent that Petitioner's argument reflects a claim that due process was violated by having his post-conviction petition heard by the judge against whom he alleges misconduct, that claim is barred from habeas review on independent and adequate state law grounds. *Coleman*, 501 U.S. at 729. Petitioner requested a remand to a different judge in his post-conviction appeal, but that request was denied for the procedural reasons discussed previously. Rule 23 Order at 7-8, *People v. Donado*, No. 1-06-0176 (Ill. App. Ct. 2007). There is no evidence to suggest that the appellate court was unaware of the fact that Judge Sachs served as Donado's trial and post-conviction judge,[6] which means that its ruling of procedural forfeiture encompasses this claim. Even if this Court were to overlook the procedural bar and rule on the merits, Petitioner's case is unpersuasive. As discussed more fully below, the evidence weighs heavily against a finding of self-defense, and Petitioner presents no evidence to this Court to trigger the "cause and prejudice" exception. This Court cannot agree that the state appellate court made an unreasonable determination of the facts in denying Petitioner's claim on Illinois procedural grounds. Petitioner's true quarrel is with his appellate counsel for failing to raise the issue on direct appeal, not with the state appellate court's dismissal of his petition. Thus, Petitioner's second habeas claim is denied.

> ### 3. Petitioner's ineffective assistance of counsel claims

Petitioner presents an array of ineffective assistance of counsel claims. Petitioner's third habeas claim alleges that his trial counsel was ineffective for filing a "hybrid" motion to quash arrest and suppress his confession, which confused the trial judge. His fourth habeas claim

---

[6] In Illinois post-conviction proceedings, the defendant's criminal trial judge ordinarily hears his or her post-conviction petition as a matter of course, unless it is shown that the defendant would be substantially prejudiced. See *People v. Hall*, 626 N.E.2d 131, 134 (Ill. 1993).

alleges that his trial counsel was ineffective for failing to call witnesses to verify the victim's violent past, seek a continuance to locate those witnesses, or present mitigation witnesses. Petitioner's fifth claim alleges that his appellate counsel was ineffective for failing to investigate the issue of Judge Sachs' alleged misconduct, such as by interviewing the jurors and for failing to raise the judge's conduct on direct appeal. Because none of these claims were presented through a complete round of state-court review, they are unexhausted and procedurally defaulted.

Before a federal court may rule on the merits of a claim such as ineffective assistance of counsel, a defendant must "fully and fairly present[] his claims to the state appellate courts." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005); see also *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Specifically, a petitioner must assert each of his or her federal claims "through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). As Respondent notes, Petitioner's fifth habeas claim was never presented to the state courts. He has previously asserted that his *trial* counsel was ineffective for failing to investigate misconduct, but not his appellate counsel. His argument that his appellate counsel was ineffective for failing to raise the judge's conduct on direct appeal appears to be entirely new. The claim is therefore unexhausted for purposes of habeas review. *Id.*

Petitioner's third habeas claim, regarding the "hybrid" motion to quash and suppress, was presented in his post-conviction petition in Illinois state court. Petitioner's fourth habeas claim—failing to call witnesses to testify to the victim's violent past, seek a continuance to locate any such witnesses, or present mitigation witnesses during sentencing— also was arguably presented in Donado's first *pro se* post-conviction petition, where he alleged his trial counsel had failed to investigate, speak with, or call witnesses on his behalf. The determination is academic,

however, because Donado failed to raise either issue in his appeal to the state appellate court. Therefore, Donado has not presented these claims through a complete round of state-court review, and they are unexhausted.[7] See *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007).

If a federal habeas petitioner has failed to properly present his federal claim(s) to the state courts, but there is no longer any corrective process available to him, then the petitioner has procedurally defaulted that claim. *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004). In such a circumstance, the Court need not consider the proper disposition of a "mixed petition," which applies only where the unexhausted claims may be corrected by the state courts.

The Court now considers whether any state corrective processes remain available to Petitioner under Illinois law. See *Engle v. Isaac*, 456 U.S. 107, 125 (1982) (courts are to look to state law that provides collateral relief to determine whether a petitioner's claims are procedurally defaulted absent a showing of cause and prejudice); *Lewis*, 390 F.3d at 1026. Because Petitioner has already filed two post-conviction petitions in Illinois state court, in order to return to the state court system to seek consideration of his unexhausted claims he would be required to file a successive petition for post-conviction relief, which requires leave of court. See 725 ILCS § 5/122-1(f) ("One petition may be filed by a petitioner * * * without leave of court"). Leave of court to file a successive post-conviction petition with an additional claim or claims is granted "only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." *Id.* Illinois law specifies the following regarding the cause and prejudice standard: "(1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific

---

[7] Petitioner makes no effort in his response brief to rebut the State's arguments regarding exhaustion of these claims.

claim during his or her post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.* Moreover, a separate provision in the Illinois Post-Conviction Act provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS § 5/122-3. The disposition of an initial post-conviction petition thus has preclusive effect with respect to all claims that *were raised or could have been raised* in that petition. See *People v. McDonald*, 365 Ill. App. 3d 390, 392–93 (Ill. App. Ct. 2006).

Petitioner already has attempted to overcome the preclusive effect of his original post-conviction petition proceedings in state court, which resulted in a denial of his petition and a specific finding that he had not met the cause and prejudice test. See Rule 23 Order, *People v. Donado*, No. 1-08-1530 (Ill. App. Ct. 2010). His claims here will likely face a similar result. The ineffective assistance of counsel grounds are not based on new evidence or law unavailable at the time of Petitioner's first post-conviction petition. The Illinois courts were unwilling to accept Donado's cause and prejudice arguments in his first try at a successive post-conviction petition; they very likely will deny leave for any future petition based on these claims.

In any event, consideration of how the Illinois courts might have treated Petitioner's unexhausted claims in a successive petition is unnecessary, because the statute of limitations is fatal to Petitioner's ability to return to state court for further proceedings. Illinois's post-conviction act specifies that if a petition for certiorari to the United States Supreme Court is not filed on direct appeal, "no proceedings under this [statute] shall be commenced * * * more than 6 months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS § 5/122-1(c).

Petitioner's PLA seeking review of the denial of post-conviction relief was denied on September 27, 2006. The deadline for seeking review in the United States Supreme Court therefore passed in late December 2006, and the six month period provided by the Illinois statute lapsed in June 2007. Petitioner has not alleged in any of his filings "facts showing that the delay" in raising new allegations with respect to these two claims "was not due to his [] culpable negligence." *Id.* Petitioner is therefore barred on limitations grounds from further proceedings in the Illinois courts.

Given that Petitioner has no recourse for further proceedings in the Illinois courts, "state corrective action" no longer exists and Petitioner has procedurally defaulted his third, fourth and fifth habeas claims. *Perriquet*, 390 F.3d at 513. Petitioner has not attempted to make a showing of cause and prejudice, and his argument for a "fundamental miscarriage of justice" exception, if he even intended it to apply to these claims, was already found to be unpersuasive. See *Coleman*, 501 U.S. at 750; *Lewis*, 390 F.3d at 1026.

### 4. Failure to file "appropriate" pre-trial motions

Petitioner's sixth habeas claim is that his trial counsel was ineffective for failing to file "appropriate" pre-trial motions. Although "appropriate" pre-trial motions is not defined, Donado did file a second post-conviction petition in Illinois state court on his trial counsel's alleged failure to file motions to suppress as well as on this trial counsel's failure to seek a fitness hearing. The post-conviction trial court denied Petitioner leave to file this successive petition, holding that Petitioner had failed to satisfy the cause-and-prejudice test (which would have permitted him to file a successive petition). See also 725 ILCS 5/122-1(f) ("Only one petition may be filed by a petitioner under this Article without leave of court. Leave of court may be

granted only if a petition demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from the failure.").

On March 24, 2010, the state appellate court affirmed the post-conviction trial court's judgment denying Donado leave to file his successive petition. On April 27, 2010, Donado filed a petition for leave to appeal in the state supreme court, raising only one claim: that the appellate court erred in applying the cause-and-prejudice test to his motion for leave to file a successive post-conviction petition because the Petitioner alleged he was mentally incompetent. On September 29, 2010, the Illinois Supreme Court denied the PLA.

The appellate court denied leave to file the successive petition on the ground that Donado had not demonstrated cause and prejudice for his failure to raise the issues presented at an earlier time. Petitioner appealed the denial, but abandoned his arguments regarding motions to suppress. His PLA challenged only the application of the cause and prejudice test to claims that allege that a petitioner is mentally unfit to stand trial. Thus, Petitioner's claim that his trial counsel failed to file "appropriate" pre-trial motions (as it pertains to a motion to suppress) is unexhausted and, for the reasons discussed above, procedurally defaulted. *Perriquet*, 390 F.3d at 513. Nowhere in his petition, amended petition, and response to the State's answer does Petitioner reference any claim related to his fitness to stand trial or to his mental capacity; therefore, while Petitioner may have exhausted that claim in the state courts, it has not been presented to this Court.

### 5. *Improper jury instructions*

Petitioner's final claim regarding ineffective assistance of trial counsel is that his trial attorney presented incomplete or improper jury instructions regarding self-defense, specifically Illinois Pattern Instructions 2.03A and 3.12X. Instruction 2.03A ("2.03A") alerts the jury that

the defendant is presumed innocent of first-degree murder, but that the defendant has the burden of proof to show any mitigating factor(s) which would make him guilty of only the lesser charge of second-degree murder. Illinois Pattern Jury Instructions, Criminal, No. 2.03A (2008). Instruction 3.12X ("3.12X") allows the judge to instruct the jury that they may consider prior convictions, acts, or reputation for violence by the victim when the defendant claims self-defense. Illinois Pattern Jury Instructions, Criminal, No. 3.12X (2008).

Donado first raised these claims on direct appeal to the Illinois Appellate Court, and the claims were denied. Donado then filed his PLA to the Illinois Supreme Court, which also was denied. Petition for Leave to Appeal, *People v. Donado*, No. 102484 (Ill. 2006). As Respondent correctly points out, Donado's PLA dropped the 2.03A argument and proceeded on 3.12X alone. The, the claim regarding 2.03A runs afoul of the rule requiring one complete round of state-court review. See *Stevens*, 489 F.3d at 883. This is true even though the Illinois Supreme Court has the power to deny review, as it did here. See *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). Because Donado failed to appeal denial of his 2.03A claim in Illinois court, it is unexhausted, and for the statute of limitations reasons given above, procedurally defaulted.[8]

Donado's 3.12X claim was timely appealed, and so the Court addresses the claim on the merits. The Instruction reads as follows:

> In this case the State must prove beyond a reasonable doubt the proposition that the defendant was not justified in using the force which he used. You have [(heard testimony) (received evidence)] of _____'s [(prior conviction of a violent crime) (prior acts of violence) (reputation for violence)]. It is for you to determine whether _____ [(was convicted) (committed those acts) (had this reputation)]. If you determine that _____ [(was convicted) (committed those acts) (had this reputation)] you may consider that evidence in deciding whether

---

[8]  In this petition, Petitioner never explains his objection to the 2.03A self-defense instructions given by the judge.

the State has proved beyond a reasonable doubt that the defendant was not justified in using the force which he used.

Illinois Pattern Jury Instructions, Criminal, No. 3.12X (2008). In Donado's criminal trial, the court instructed the jurors that they could consider Arturo Montelongo's prior conviction for a violent crime when deciding whether Donado acted in self-defense, but did not specifically and additionally instruct that they could also consider his prior acts of violence or reputation for violence. Donado alleges that this was due to his criminal trial counsel's failure to "tender a complete jury instruction," which presumably would have included those additional instructions.

As noted, Donado appealed his conviction on this ground (and others) to the Illinois Appellate Court. The court denied his appeal, reasoning as follows:

> To prevail on a claim that his trial counsel was ineffective for failing to submit particular instructions to the jury, defendant must show that the instructions would have been given and that the trial outcome would have been different. *People v. Foreman*, 361 Ill. App. 3d 136, 142 (2005). We find that defendant in this case failed to make such [a] showing. Defendant's guilt depended on the credibility of the witnesses, the weight accorded their testimony and the evidence presented at trial. Defendant testified that he had witnessed Montelongo attack other individuals approximately 20 to 30 times during the previous 12 years. Defendant also testified that Montelongo regularly carried a gun and defendant heard that Montelongo previously shot an individual who owed Montelongo money. The record shows that the jury received an instruction on first degree murder. Thus, the jury was given the opportunity to convict defendant of second degree murder based on self-defense if it accepted defendant's testimony that he was protecting himself from the deceased. The jury rejected defendant's testimony as to self-defense and found defendant guilty of first degree murder. There is nothing to suggest that the jury disregarded portions of defendant's testimony or that the jury's determination would have been different had the jury instructions included these portions of defendant's testimony.

Rule 23 Order, *People v. Donado*, No. 1-04-2066, at 17-18 (Ill. App. Ct. Mar. 16, 2006). On habeas review, Donado contends that the state appellate court's ruling denying his ineffective assistance of counsel claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984).

*Strickland* governs the Court's inquiry into ineffective assistance of counsel claims. Under *Strickland*, a claimant must prove (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694; see also *Ward v. Jenkins*, 613 F.3d 692, 699 (7th Cir. 2010). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. On federal habeas review, "the question is whether the state court's determination that such a probability does not exist is reasonable." *Ellison v. Acevedo*, 593 F.3d 625, 633 (7th Cir. 2010); see also *Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997) ("only a clear error in applying *Strickland*'s standard would support a writ of habeas corpus"). The bar is extremely high: "as long as we are satisfied that the [state court] took the constitutional standard seriously and produced an answer within the range of defensible positions," the writ of habeas should be denied. *Taylor v. Bradley*, 448 F.3d 942, 948 (7th Cir. 2006).

The language used by the Illinois Appellate Court is imperfect,[9] but the violation here simply does not meet the high standard required by law and precedent. First, the state appellate court's decision rejecting this ground was not contrary to *Strickland*, even though its language describing Petitioner's burden at this point in its opinion could have been more precise. Although the court misstates the test, it does so in a way that is arguably beneficial to Donado, as the court apparently confined its analysis to whether Donado was prejudiced by the missing

---

[9] This Court is less troubled than it might be by the misstatement of the *Strickland* test here, since the citation given by the Appellate Court in fact states the test correctly (see *People v. Foreman*, 836 N.E. 2d 750, 756 (Ill. App. Ct. 2005)), and *Strickland* was cited and used correctly earlier in the opinion. See Rule 23 Order, *People v. Donado*, No. 1-04-2066, at 15 (Ill. App. Ct. Mar. 16, 2006).

instruction. The correctly-stated *Strickland* test also required Donado to show that his trial attorney's actions fell below an "objective standard of reasonableness," not simply that the instruction actually would have been permitted. Furthermore, simply misstating the *Strickland* test is not sufficient error. A state court need not cite to, or even be aware of, relevant Supreme Court precedent, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). In this case, the reasoning and result of the Illinois Appellate Court decision does not contradict federal law. The reasons given by the court are sound, as is its review of the evidence presented. The appellate court's phrasing of the *Strickland* test is inexact, but captures its spirit.

Petitioner argues that the appellate court further erred when it wrote that there was "nothing to suggest that the jury disregarded portions of defendant's testimony," because the question is whether Donado received a fair trial if the jury was not fully instructed on self-defense. Donado argues that the court's assumption that the jury considered the violent acts evidence without an instruction is pure speculation. *Id.* This argument misses the point. It is Petitioner's burden to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The speculation as to the jury's actions was merely the end-cap on a host of reasons advanced by the appellate court as to why it felt that he had not made his case. Considering the fact that the judge did instruct the jury that they could consider Montelongo's previous conviction for a violent crime, and the significant evidence pointing away from Petitioner's self-defense theory, see discussion *infra* pp. 37-38, the Court agrees that the appellate court's denial of the "reasonable probability" prong of the *Strickland* test was "an answer within the range of defensible positions." *Taylor*, 448 F.3d at 948. The appellate court's decision regarding

instruction 3.12X was not contrary to, or an unreasonable application of, *Strickland v. Washington*.

      6.     *Self-defense claim*

In his final habeas claim, Petitioner challenges the sufficiency of the evidence to sustain his conviction. Specifically, he contends that the State failed to prove beyond a reasonable doubt that he did not act in self-defense when the evidence showed that the victim, Montelongo, attacked him, thereby justifying the shooting in self-defense. Petitioner asserts that the state appellate court's rejection of this claim was contrary to, or an unreasonable application of, federal law, or was an unreasonable determination of the facts in light of the evidence presented at trial.

Like many of his claims, Petitioner has failed to present this issue through one complete round of state-court review. Although Donado timely appealed the self-defense claim to the Illinois state appellate court, he failed to raise it in his PLA to the Illinois Supreme Court. See Petition for Leave to Appeal, *People v. Donado*, No. 102484 (Ill. Sep. 27, 2006). This renders his claim unexhausted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999); *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007). Because the Illinois post-conviction statute will bar any new claims at this late point in the proceedings, 725 ILCS § 5/122-1(c), "state corrective action" no longer exists, and Petitioner has procedurally defaulted his Sixth habeas claim. *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004). Additionally, Petitioner makes no attempt to demonstrate either cause and prejudice or a fundamental miscarriage of justice to excuse his default. See *Coleman*, 501 U.S. at 750; see, *e.g.*, *Crockett,* 542 F.3d at 1193 (when petitioner fails to argue excuse for procedural default "we cannot consider his claim"); *Bell v.*

*Pierson*, 267 F.3d 544, 555 n.6 (7th Cir. 2001) (failure to allege grounds for excusing default results in forfeiture).

However, even if Petitioner's sufficiency-of-the-evidence claim were not procedurally defaulted, it is not persuasive in any event. The appellate court rejected this claim, holding that the jury reasonably found that Petitioner did not shoot the victim in self-defense. Sufficiency-of-the-evidence claims are governed by the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which held that due process is satisfied if, viewing the evidence in the light most favorable to the prosecution, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). The state appellate court correctly applied this standard. *See* Exh. A at 9-12 ("We review the decision of the t[r]ier of fact looking at the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found, beyond a reasonable doubt, that the defendant did not act in self-defense."). Although the state appellate court did not directly cite *Jackson*, it was not required to do so. See *Early v. Packer*, 537 U.S. 3, 8 (2002) ("[A]wareness of [Supreme Court] cases [is not required], so long as neither the reasoning nor the result of the state-court decision contradicts them."). Because the state appellate court correctly identified and articulated the governing legal standard, its decision was not contrary to *Jackson.*

Under that standard, the state appellate court reasonably held that there was ample evidence supporting the jury's verdict that Petitioner was guilty of first degree murder and that Petitioner had not shot the victim in self-defense. Indeed, the jury's verdict was amply supported by (1) the physical and forensic evidence which revealed that Montelongo had a "contact" wound to the back of his head, establishing that the gun was held to the back of Montelongo's head at the time of the shooting and that the shooting was an "execution" rather than one in self-

defense; and (2) evidence disputing Petitioner's version of the events based on Petitioner's failure to tell police that Montelongo threatened to kill him, that they were gang members, that Montelongo put his hands around Petitioner's neck, and that he had wrestled with Montelongo in the alley or that Petitioner had panicked. *See* Exh. A at 2-8. Viewing the evidence in the light most favorable to the prosecution, the appellate court did not unreasonably hold that the proof demonstrated Petitioner's guilt of first degree murder beyond a reasonable doubt.

In sum, given Donado's constantly shifting story, the evidence showing that the victim was shot multiple times in the chest, forearm, and back, and especially the evidence of the close-range, "execution-style" shot to the back of the head, the Court concludes that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* Therefore, Petitioner's eighth habeas claim is denied.

## IV.    Conclusion

For the reasons stated above, Petitioner Donado's amended petition for writ of habeas corpus [4] is respectfully denied.

Dated: February 1, 2011                    _____

                                           Robert M. Dow, Jr.
                                           United States District Judge